THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE No: 8:07-CV-1463-T-23TBM

EUGENE C. SMALLS

Plaintiff,

Vs.

ACCREDITED HOME LENDERS, INC.,
ET AL

Defendants.

SECOND AMENDED COMPLAINT;
REQUEST FOR "INJUNCTIVE RELIEF
SOUGHT" FOR BREACH OF
FORBEARANCE AGREEMENT; CLAIM
FOR DAMAGES; SUMMONS;
"DEMAND FOR JURY TRIAL" AND
CERTIFICATE OF SERVICE.

FILED

## SECOND AMENDED COMPLAINT

**COMES NOW** Plaintiff, Eugene C. Smalls (Smalls) and in the cause of action against Defendants, Accredited Home Lenders, Inc., et al (Hereinafter referred to as Accredited, AHL or Accredited, et al) alleges as follows:

RECITALS:

1. Plaintiff, known as EUGENE C. SMALLS, was at all times pertinent hereto a resident of the City of Largo, County of Pinellas, State of Florida.

2. Defendant, ACCREDITED HOME LENDERS, INC. is a mortgage lending company whose main office is in the State of California. AGENCIES PARTNERSHIPS, CORPORATIONS, NON-PROFIT ORGANIZATIONS, (ET AL DEFENDANTS) are sued herein under fictitious names for the reason that their true names, identities and capacities are presently unknown to Plaintiff, except they are the agents, servants, employees, employers, representatives, co-venturers, associates, vendors, suppliers, manufacturers, lessors, sub-contractors or contractors of the named Defendants and/or designed and/or leased and/or placed on the market a product or service which was defective and which defect was a legal cause or contributing cause of the injuries or damages to Plaintiff Smalls and whom inspected and/or maintained and/or controlled or owned some object, product, or property and/or conducted some activity in a negligent or dangerous manner which

negligence was a legal cause of injuries or damages to Plaintiff Smalls and/or were in some manner related to the named Defendants and that their true names, identities, capacities, activities and/or responsibilities are presently unknown to Plaintiff. Plaintiff and/or his representative(s) has/have made diligent and good faith efforts to ascertain the full names, identities and interest in this action of the Defendants, including attorneys but not limited to the following reviewed relevant statements, requesting information from counsel who previously represented parties herein in related matters.

Done in Largo Florida, this 8 day of January, 2008.

EUGENE C. SMALLS
2312 22nd Ave SW
Largo, FL 33774
Tel: (727) 581-2782

## PRELIMINARY STATEMENT

3.  Smalls bring this suit for wrongful foreclosure procedures, breach of an oral contract forbearance agreement, fraud, negligence, misrepresentation and intentional infliction of emotional distress.

4.  Defendant Accredited  had no valid claim and therefore no  reason to file a LIS PENDENS suit against Smalls Chapter 702 FORECLOSURE OF MORTGAGES, AGREEMENTS FOR DEEDS, AND STATUTORY LIENS. On June 21, 2006. The foreclosure action could have been voided by either party on the grounds it *had no basis in law or fact* in that on June 29, 2006, Smalls received written confirmation from Accredited  declaring Smalls' mortgage loan to be *current*.  Accredited clearly filed a complaint against Smalls in bad faith and with unclean hands.

5.  This action further stems from non-performance of the *FORBEARANCE AGREEMENT* in place at the time Accredited, as the Plaintiff, brought a LIS PENDENS Foreclosure Action against Smalls (Accredited vs. Eugene C. Smalls, Case Number: 06-4216-CI-08 dated June 21, 2006).  AHL is consider to be a "Servicer/or furnisher of a federally related mortgage loan," as defined by the Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. §§ 2605(i)(2) & 2602(1).

6.  On July 5, 2006,  attorney for Accredited Home Lenders, Inc., Miss Susan Yeong J. Kang, filed with the Circuit Court for Pinellas County a *Motion For Summary Final Judgment Of Foreclosure* despite being a party to a *Forbearance Agreement* relating to the property located at Lot 5, Of Gulf Terrace, First Addition, According To The Plat Thereof, As Recorded In Plat Book 68, At Page 13 of The Public Records Of Pinellas County, Florida.

## JURISDICTION

7.  Federal question jurisdiction arises under RESPA, 12 U.S.C. 2601, 2602(1) *et seq*, the Truth In Lending Act, 15 U.S.C. §1601 *et seq.*, and 28 U.S.C. §§1331, 1337. At issue in this case is the title to a home worth in excess of $100, 000 and claims for damages arising from a wrongful foreclosure action on that property and a breach of a Forbearance Agreement. Federal diversity jurisdiction arises under 28 U.S.C. §1332 between these diverse parties.  This court may exercise supplemental jurisdiction over the related state

3

law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims under 28 U.S.C. §1367.  This Court has jurisdiction under 28 U.S.C. §1331, providing for original jurisdiction of the U.S. District Court for civil actions arising under the laws of the United States.

8.  Plaintiff Smalls seeks damages in an amount greater than $75,000, exclusive of interest, costs and possible attorneys fees and equitable relief, including both monetary reimbursement and injunctive relief.

## VENUE

9.  Venue is proper in this court as Accredited brought their original complaint in the Circuit Court for Pinellas against Smalls for a *Foreclosure Action*, filed on or about June 21, 2006, File # 06-4216-CI-08; the property in question is located in Pinellas County of the State of Florida; the injury and damages to Smalls occurred in Pinellas County in the State Of Florida and as Smalls is a resident of Pinellas County in the State of Florida.

## PARTIES

10.  Plaintiff EUGENE C. SMALLS (Smalls) is and was at all times relevant to the allegations herein, a citizen of the United States and a resident of the domiciliary of the State of Florida, County of Pinellas, City of Largo., at 2312 22nd Ave SW in Largo, Florida 33774.

11.   Defendants in this lawsuit are: ACCREDITED HOME LENDERS, INC, et al. Accredited Home Lenders, Inc ("AHL") is a California Corporation with its principal place of business in California and whose resident agent, the Corporation Company, does business at 16550 West Bernardo Drive, Bldg 1, San Diego, CA 92127.

## FACTUAL ALLEGATIONS

12.  Mr. Smalls, was born on November 6, 1960 and is a citizen of the United States and in particular, a resident of the City of Largo, County of Pinellas, State of Florida. Smalls is currently retired from military service on a medical discharge stemming from medical conditions incurred in or that first became symptomatic while in the military service.

13.  Smalls has resided continuously at the property in question which is located at 2312 22nd Ave SW Largo, Florida 33774 since October 25, 2003. The property in question is a single family home that was passed down to Smalls by his late father, Mr. Eugene

Smalls Sr, which Defendants were seeking to take from Smalls by clever artifice or flagrant fraud.

14.   The first inkling there was a problem was when Smalls was informed by the Mortgage Broker, Ms Sheryl Brown, LICENSE# MB 0421255. Ms Brown's operates a mortgage brokerage firm, Brown Financial Group, Inc which is regulated under Chapter 494, MORTGAGE BROKERAGE AND MORTGAGE LENDING. Ms. Brown represented that Smalls was being charged a **"broker's fee" as opposed to a Loan Origination Fee, or an Application Fee.** The fee was in the amount of **$3,999.00**. Smalls disputed this charge. "Real Estate Brokers have a common law duty to deal honestly and fairly. This duty requires brokers to disclose to the principal any material fact to the transaction." Case File Number CP2006 11 00103. Smalls contacted the Office Of Financial Regulation for their review, investigation and findings of this matter. However, the dispute was never resolved by the Office Of Financial Regulation, who claimed the documents in question had been mislabeled. Smalls responded back to the Office Of Financial Regulation stating that Brown Financial Group, Inc's statement was unacceptable and that Smalls was demanding further action be taken for this unwarranted behavior. Smalls believes Brown Financial Group Inc plain out lied to Smalls in order to gain an unfair advantage and that Ms Brown's action was deceptive, dishonest or misleading at best. To date, Smalls has not heard back from the Tampa Regional Office Of Financial Regulation regarding the disputed facts surrounding this issue.

15.   On the U.S. Department Of Housing and Urban Development (HUD) Form dated February 3, 2005, there appears the heading,"LENDER'S INSTRUCTION". Smalls was charged an "Origination Fee" by Accredited Home Lenders, Inc in the amount of $538.50; Appraisal Fee to Elite Appraisal Services in the amount of $257.00; Tax Service Fee to Accredited Home Lenders, Inc in the amount of $ 66.00; Flood Cert/Life of Loan Fee to Accredited Home Lenders, Inc in the amount of $ 9.50; Underwriting Fee in the amount of $919.50; **Brokers Fee to Brown Financial Group, Inc** in the amount of $ **3,990.00**; Hazzard Insurance Premium to Mutual Insurance in the amount of $ 1,582.86; Hazzard Insurance 3 Months @ $131.91 per month in the amount of $395, Settlement or Closing Fee to SUNCOAST Title agency of Tampa, Inc in the amount of $250.00. Abstract or Title

Search to SUNCOAST TITLE AGENCY OF TAMPA, INC in the amount of $65.00, Title Examination to SUNCOAST TITLE AGENCY in the amount of $235.00; Title Insurance to SUNCOAST AGENCY OF TAMPA, INC in the amount of $613.50; Shipping /Handing/Tax Fee to SUNCOAST TITLE in the amount of $80.00;(risk Rate of $25/$10 Processing) to SUNCOAST TITLE AGENCY in the amount of $35.00; Endorsement FL Form 9 to SUNCOAST TITLE in the amount of $ 61.35; Mortgage Recording/Handling Fees Release Recording Fees in the amount of $235.00; Mortgage State Tax Stamp in the amount of $376.00 and Intangible Tax to Clerk of the Circuit Court in the amount of $215.40 for a grand total of $9,970.76.

16. Smalls closed out the Mortgagee Contract on or about January 26 2005, through the Title Agency, SUNCOAST TITLE AGENCY, located at 2901 W. Busch Blvd., Suite 307, Tampa, Florida 33618. The Title Officer was Mr. William D. Poirier, Jr, LICENCED CLOSING ESCROW OFFICER.

17. Smalls originally had a loan with Mcdill Federal Credit Union in the amount of $50,000. On January 26, 2005, Smalls refinanced through AHL in the amount of $107,000. Smalls' monthly payments under this loan were in the amount of $865.81 at a fixed rate.

18. On or about May of 2006, AHL had, in fact, failed to timely post two of Smalls' mortgage payments, which failure was the proximate cause of the *perceived default* of his loan. This was a dishonest act on the part of AHL. One of Smalls' payments was by way of two negotiable instruments drawn on certified funds dated May 25, 2006 and the other one was by way of a similar negotiable instrument dated June 6, 2006 for a total amount of $1,888.00. Payments were further identified so as to be properly applied to the correct account, with AHL code #08FIP459 written on the face of said negotiable instruments. It is clear AHL's intent was to defraud Smalls in order to dispossess him of his home by calling in his mortgage note, promissory note or other instrument on the feigned premise that he was in arrears on his payments.

19. On or about June 12, 2006, Smalls received a letter from AHL, Inc's Louis Santos, Loss Mitigation Specialist. The letter was *dated June 8, 2006* and *demanded payment* in the amount of $7,036.92. The letter further stated Smalls needed to pay the amount in

question with a cashier's check, Western Union Quick Collect, *by June 8, 2006. It is disingenuous to require payment in a document that was dated the same date payment was demanded.* AHL falsely stated that Smalls was in default in the amount of $ 4,015.12, when the truth of the matter Smalls only owed $ 2,127.12 and had not made his initial monthly payment that would have left him owing only $ 1,201.31.   Therefore, AHL committed fraud while performing duties required by Federal law and additionally violated the Florida Consumer Collection Practices Act and the Florida Unfair and Deceptive Trade Practices Act. Therefore, the essence of Smalls' Complaint is that AHL acted unlawfully by asserting a claim for a debt that was in excess of the actual cost Smalls owed. Specifically, AHL argued Smalls was in default in the amount of $ 4,015.12, late charges $147.80, and outstanding Attorney's Fees of $ 2,874.00 for a total of $7, 036.92. In this same letter AHL claimed Smalls owed $4,015.12 in legitimate mortgage fees and were demanding an additional $2,874.00 in *attorney's fees*. These fees were _unearned_ and thus erroneous as the foreclosure action to Smalls' property had not yet been filed at the time AHL was attempting to charge *attorney's fees*. Smalls was required to pay an additional $221.73 each month toward these *attorney's fees* until June 21, 2007 to prevent default which would *return the matter to foreclosure*. This fact is proof *a forbearance agreement was in place.*

20. Then, on June 20, 2006, AHL attorney, Ms Susan Yeong J. Kang,  further submitted a billing to Smalls identified as the Principal Balance in the amount of $106, 515.18, Accumulated Interest to June 20, 2006, (per diem: $26.23 and Late Charges in the amount of $383.40 for a grand total of $ 111, 653.70. In another letter dated on or about the same day June 20, 2006, Smalls received a letter from AHL's law firm, Ben-Ezra & Katz, P.A. This letter reportedly broke down the payments claimed to be owed by Smalls along with attorney's fees which were at that time $1,814.00. AHL's Complaint alleges inter alia that Smalls owed a principal balance of $111,653.70 when the loan was only for $107,700.00.

21.  On June 22, 2006 Smalls disputed the amount AHL claimed he owed under the Fair Billing Act, 15 U.S.C. §1601 and/or other statute(s) which Act(s) allow for dispute resolution within the framework of a cooling off period of *thirty days* and which would have

allowed AHL to investigate Smalls' dispute. Had AHL properly investigated Smalls' dispute they would have discovered that Smalls had only owed $2,127.12, and not as much as AHL falsely claimed Smalls owed. AHL was therefore premature in filing a civil action for relief by way of foreclosing on Smalls' property. AHL failed to respond to Smalls' dispute under the Fair Billing Act, requested in a timely manner and naming the U.S. Title thereof.

22.   On or about June 22, 2006, Smalls received a Complaint in a *Mortgage Foreclosure* Action concerning his single family home. Smalls never received a certified letter or any communication, including but not limited to a courtesy call, to inform him of an intent by Accredited Home Lenders, Inc to file a civil action concerning Smalls' promissory note or loan agreement or his mortgage nor did AHL make any attempt whatsoever to resolve the issue or make any effort to contact Smalls in an attempt to have Smalls bring the account current before filing a civil action in the most recent instance in which Smalls found himself as a defendant and AHL was the Plaintiff (Case Number: 06-4216-CI-08). AHL had a duty to allow  Smalls at least twenty days from the date Smalls was informed of any Default to cure the default before AHL declared the entire debt due.

23.  Smalls admits he was *35 days* or more days late on his mortgage payment *on one or more occasions* but neither this fact nor the admission thereof should form the basis for a civil action concerning default of property without first making a good faith effort to offer an opportunity for the mortgagor to bring his mortgage payment current under an existing forbearance agreement. The foreclosure action was premature and therefore frivolous, filed in bad faith, with unclean hands and filed with intent to incite/or for the purpose of harassment or trying to take Smalls home and not as the result of other non-adversarial efforts having failed.

24.  On **June 26, 2006** Smalls had  cured his mortgage loan account by bringing his account with AHL *current* and the only remaining amount he believed was still in *dispute* was the alleged **attorney's fees** which he continued to pay under protest. Smalls believes these fees were artificially introduced in the first instance and are  artificially inflated in the second. Smalls continues to dispute the attorneys fees in question in the amount of **$2,874.00**. Smalls believe any attorney's fees should be borne by AHL for jumping the gun without first making an effort to collect any debt before assigning an attorney to file suit

against Smalls and these acts are particularly reprehensible given that AHL was fully aware of Smalls' financial hardship, mental status and medical condition.

25. On or about June 26, 2006, under duress and threat of forfeiture of Smalls' home, he signed the <u>Forbearance Agreement</u> while on stress medications, *being coerced* by Mr. Louis Santos who is a representative for AHL to sign an agreement to pay the total cost of the mortgage **and** their attorney's fees. It has already been established there was an ongoing dispute over the legality and amount of these fees and that AHL, Inc. had been made aware of Smalls' mental state of mind and medical conditions. Mr. Louis Santos explained that this agreement would be *the only way they would deal with Smalls. Otherwise Smalls would be faced with losing his home through foreclosure* action.

The Forbearance Agreement was signed *under extreme duress* AHL was aware of this and yet chose to use threatening tactics anyway.  On the same day June 26, 2006 Mr. Louis Santos, representing AHL, explained that by signing this agreement, *all efforts to the pending foreclosure will cease and desist* and *Mr. Louis Santos would contact AHL, Inc's attorneys and tell them to place a hold on the foreclose*. Therefore, AHL also had a duty to carry out but they failed to do so. The forbearance agreement required Smalls to make payments of $1,225.51 per month for a period of 12 months commencing on July 2006 and ending on June 1, 2007.  AHL and its representative, Mr. Santos, breached their fiduciary duty toward Smalls.  Under the terms of that agreement, Smalls was required to pay AHL artificially introduced and highly inflated attorney's fees due to *a default which AHL had themselves manufactured* in violation of the Predatory Lenders Act. Thus the manufactured default forced Smalls to needlessly pay an extra $221.73 per month over the stated amount due.  Smalls never had a fair chance to cure the default as required by law or in accordance with the terms of the Note prior to AHL filing suit.

26. AHL never actually executed or agreed to the terms which it had proposed in the forbearance agreement and never returned an executed copy to Smalls,  signed by Mr. Louis Santos or by AHL Officers.  Absent a copy of this Agreement from AHL, smalls was again unfairly taken advantage of.

27. Prior to accepting any payments from Smalls, AHL demand Smalls pay $4,386.00 as an initial amount against what AHL claimed Smalls owed.  The amount requested was

included in the two cashiers's checks that were returned to Smalls. Smalls, upon receipt, immediately sent the two cashier's checks back to AHL for proper credit to his account.

28. Thus, on June 26, 2006  Smalls had in fact paid this $4,386.00, with the two cashier's checks totaling that same amount and was now *current* on his mortgage payments.

29. On July 5, 2006, **just *nine days later,* in violation of the forbearance agreement** and in spite of Smalls having come "current" on his mortgage, AHL's Attorneys filed a ***Motion For Summary Final Judgement Of Foreclosure*** in the Circuit Court of the Sixth Judicial Circuit of Florida in and for Pinellas County, Case No. 06-4216-CI-08. Once this document was filed in court, Smalls could be subject to summary proceedings to evict him from his home at any given time, at least this is what Smalls was left to believe. This was a great source of stress to Smalls especially as he had followed to the letter every demand for payment he received even though he had paid some of these fees under protest. Smalls asserted  the forbearance agreement is not an enforceable contract because (1) It was not supported by consideration (2) The forbearance agreement is not an enforceable contract because it was induced by fraud and signed under duress and (3) In any event, AHL's attorneys breached the forbearance agreement when they filed for Summary Final Judgement.

30. Smalls faithfully paid according to the terms of the forbearance agreement, making the following payments:

A. July 2006, within the ten days grace period, in the amount of $1,225.51

B. August 2006, within the ten days grace period, in the amount of $1,225.51

C. September 2006, within the ten days grace period, in the amount of $1,225.51

D. October 2006, within the ten days grace period, in the amount of $1,225.51

E. November 2006, within the ten days grace period, in the amount of $1,225.51

F. December 2006, within the ten days grace period, in the amount of $1,225.51

G. January 2007, within the ten days grace period, in the amount of $1,225.51

H. February 2007, within the ten days grace period, in the amount of $1,225.51

I. March 2007, within the ten days grace period, in the amount of $1,225.51

J. April 2007, within the ten days grace period, in the amount of $1,225.51

K. May 2007, within the ten days grace period, in the amount of $1,225.51

L. June 2007, within the ten days grace period, in the amount of $1,225.51

31. On June of 2007, Smalls made the final payment under the terms of the agreement which now entitled him to return to tendering his payments of approximately $1,004.00 per month.

32. On September 26, 2006, Smalls contacted AHL through U. S. Mail certified letter l# 7005 1820 0007 8784 5174 for the second time due to no response from AHL, to the earlier letter Smalls wrote to them on September 13, 2006. Smalls requested the same documents he had earlier requested and reiterated his demand that they investigate his dispute concerning his account, and further requested certain documents dealing with his loan. The documents requested consisted of copies from the original loan package such as pay-off amount of the mortgage, promissory Note, Mortgage or Deed of trust, Application for the loan, Good faith Estimate, Settlement Statement, Right to Cancel/Right to Rescission, Hud 1 Statement, TILA Disclosure, RESPA Servicing disclosure, any and all disclosures and a copy of the current billing statement. However, AHL did not forward the requested documents or investigate Smalls' disputes. AHL has a duty to act in good faith for the benefit of Smalls in faithfully executing duties required by the Real Estate Settlement Procedures Act., as well as other cited Acts and to act in the utmost good faith in disclosing all material information requested by Smalls.

33. Smalls' personal, social and economic life was adversely affected by the filing of Foreclosure on Smalls' property in the Circuit Court for Pinellas County. Smalls further **suffered loss of reputation, embarrassment and humiliation** due to AHL filing a Complaint against him. AHL libeled and or slandered Smalls by publishing his home in the Court Public Records as in foreclosure, *distributing false misleading and inaccurate information with reckless* disregard for whether the information contained in the Complaint was true or not, when the whole case could has been avoided in the first instance. AHL has caused Smalls financial hardship and has set Smalls back even further in his current bills. Damages to Smalls include that he fell behind in his payments to other creditors until those creditors *charging off* Smalls' accounts, damaging Smalls' credit rating and score, further aggravating/exacerbating Smalls' stress condition. Smalls did not

receive any disclosure from AHL while mutually subject to the Forbearance Agreement with AHL, nor did Smalls receive any billing statements during the life of the Forbearance Agreement.

34. Smalls privacy was invaded due to AHL having maliciously filed a suit against him and his home was being publicly published to the world at large and reported at Pinellas Court House in Largo and on the Internet in a consumer report as a foreclosure property and listed under properties at a very low cost. Smalls experienced unreasonable intrusion upon his seclusion or solitude or into his private affairs. Smalls further suffered embarrassment and humiliation when potential buyers came to view Smalls' home by making offers to "save" his home by means of monetary loans with exorbitant fees, co-ownership offers or offers to purchase the property for an extremely deflated amount. AHL's actions have caused Smalls to suffer an serious decline in his own personal worth and an immeasurable loss of reputation in the community.

35. AHL reported false, inaccurate, misleading information to the three Major Credit Reporting Agencies concerning Smalls' account with AHL. This can be seen on Equifax Credit Reports dated May 5, 2006 and January 22, 2007 and on an Experian Credit Report dated December 29, 2006.

36. Smalls was forced to spend considerable time and effort trying to resolve his problems with AHL. Smalls suffered tremendous mental anguish, distress, and embarrassment as a direct result of AHL failing to report accurate information concerning Smalls' account to the credit reporting agencies and AHL having failed to investigate Smalls' disputes in a timely fashion. Smalls was forced to seek additional psychological counseling with his treating psychiatrist, Dr. Karl D, Jones, M.D., PA who increased his medications due to increased mental anguish and distress directly related by the actions of AHL. It is clear AHL has engaged in willful practices and acts which were designed not to obtain lawfully due payments but to overtax Smalls both mentally and financially and force foreclosure so as to extract his home from him.

37. Smalls was compelled to continue to make payments as agreed even though some of the monies being extorted were based only on "estimated" costs. The March 2, 2007 letter from AHL's attorney by the name of David Rodstein, notes this: "Enclosed is our

check in the amount of $803.00 which reflects the difference between the estimated amount, which was included in your repayment plan, and the actual amount *due at the time you entered into the repayment plan*. Please keep in mind that as the full $2,874.00 was included in your payment plan, you should continue payment of *the amount under that plan* until the plan is completed." [We are sending the check and Voluntary Dismissal in the case of <u>AHL vs. Smalls</u> # 06-4216-CI-08 to you in satisfaction of all amounts due *and any claims that you may have in connection with the mortgage or this matter*]. Please note that we inquired if it was possible to adjust your credit report according to your request. AHL is not able to do so because it is obligated to report the <u>facts</u> as contained in its payment records."

38.   On March 9, 2007 Smalls responded back to AHL's Attorney, Mr. Rodstein,  and sent the $803.00 check back to them. The instant action is to recover *all* <u>unlawfully extorted</u> <u>monies</u> and to make Smalls whole through injunctive relief to restore his creditworthiness, and his position in the community and to provide monetary relief to restore his ability to make good on other bills he had to forego in order to engage in this very stressful battle to wrest back  ownership of his home from the unscrupulous acts of AHL, a predatory lender of first degree.  The Fair Credit Reporting Act, 15 USC  §1681does not state that a consumer report must show the <u>facts</u> as a creditor sees them. Rather, it states the reported items  provided by the Furnishers (in this case, AHL) under the FCRA Sec. § 623(a)(3) and placed on a <u>Data Base Tape</u> must be *complete and accurate.*

39.   On May 16, 2007 Smalls received a notice from AHL falsely alleging Smalls was once again late with his payments. "(Ten-day Notification Default Forbearance Agreement at the subject property location of 2312 22nd Av South West, Largo Florida 33774.). AHL's notice further stated the current beneficiary of the Mortgage in the above foreclosure (AHL) has advised the attorney handling the foreclosure action of the above-referenced property to proceed with the foreclosure action due to Smalls failure to maintain payments under the terms of Smalls' Forbearance Agreement to cure the outstanding loan default. This letter will constitute your ten (10) days notification of default as provided by your Forbearance Agreement with AHL." AHL alleged  Smalls was late with his payment in the amount of $1104.51.  On June 15, 2007, Smalls received another notification letter from

AHL restating the same thing. But, this time the amount in question was $585.25.

40. On July 5, 2007 Smalls received another letter from AHL stating, "As of the date of this letter, we are in receipt of funds in the amount of **$2,974.91**. This letter confirms that this amount was sufficient to reinstate your account from foreclosure." Now here is the confusing part. AHL further stated, "Mr. Smalls account is now current and our foreclosure file is now closed. Smalls' next payment due is July 1, 2007 and the difference of the payments is $627.81. Your payment will be $1,006.28 once this balance is paid."

41. On July 10, 2007 Smalls received another letter from AHL claiming basically the same thing. "This is a reminder of the ten (10) days notification of default as provided by your Forbearance Agreement with Accredited." This time AHL claimed Smalls was late with his payment in the amount of $1,006.28.

42. Smalls disputed each one of these notices from AHL under the Fair Billing Act, 15 U.S.C. §1601 in his letters dated May, 7, 2007, May 22, 2007, June 19, 2007, June 27, 2007, July 11, 2007, July 16, 2007, July 24, 2007 and July 25, 2005. Smalls misdated the last dispute letter. It should have been dated **July 25, 2007.** *It is physically impossible for Smalls to have been late in any one of these payments* as he sent each of them *through Quick Collect Western Union.* AHL was therefore in receipt of the monies the same day, within five minutes from the time Smalls sent the monies.

43. AHL's Notification letters forced Smalls to experience further aggravation of his stress condition, mental anguish, distress, and embarrassment as a direct and proximate result of AHL's failure to investigate, reinvestigate and correct the disputed information under the Fair Billing Act, 15 USC § 1601. These actions by AHL are another in a series of acts toward Smalls that helped reinforce the pattern of intimidation and harassment which are the hallmark of AHL's operation: To take consumer's homes by fraud.

44. Smalls has paid an *extra fee* in relationship to AHL's attorney for their services concerning the foreclosure matter. The total amount is **$2,874.00** and an additional service fee of **$155.40** for sending the payment through Western Union. All of the above has forced Smalls to find another mortgage firm. Although the interest rate is 13.09% higher than what he had at the rate of 8.9900%, he just want to be free from Accredited Home Lenders, Inc. as he could no longer trust them with the title to his home and other

14

information that is in their possession as a mortgagee.

45. On August 14, 2007, Smalls was approved for a loan through *Citi-financial* to pay off the remaining balance Smalls had owed AHL. Due to this pay-off, Smalls is entitled to recover the amount he had to pay to AHL as a *Prepayment Penalty,* in the amount of **($5,263.33)**. This penalty was the direct result of AHL's unfair Business Practice and tactics against Smalls which motivated Smalls to do whatever it took to be free from the clutches of this predatory lender ("AHL"). The interesting thing is that AHL's attorney, Ms Susan Yeong J. Kang, sent a letter, dated June 20, 2006, stating Smalls reportedly owed **$111,653.70** to pay off his account with AHL, Fourteen months later, on August 8, 2007, when Smalls was approved through Citi Financial for a loan to pay off the mortgage loan with AHL, the total pay-off of the mortgage loan with AHL was **$111,536.72**. How could it be that over a year had gone by with Smalls making regular payments, that almost the same payoff was required? It is possible that AHL may owe additional monies to Smalls concerning this pay-off.

46. On August 11, 2007, Smalls received a sort of postcard from AHL in reference to **"Notice Of Intent To Foreclose."** AHL claimed Smalls' loan was in default of the installments commencing July 1, 2007. How much longer will AHL continue to falsely <u>extort monies</u> from Smalls, when it does not belong to them? Smalls was required to cure this default no later than *thirty days* from the date of the notice, which was dated August 3, 2007. AHL claimed the amount that needed to be paid, including all late fees and other fees, was $1,433.70. Smalls testified to the fact that on July 5, 2007, at 12:03 p.m. he sent, by way of Western Union Quick Collect, a payment in the amount of $1004.00, which was received by AHL July 5, 2007 at 12:08 p.m. Smalls further confirmed that on August 1, 2007 he sent payment in the amount of $1006.00, by way of two days mail and AHL received it on August 3, 2007, at 7:25 a.m. Therefore, Smalls is not in Default as AHL once again falsely, maliciously claimed.

47. Smalls received another letter from AHL dated August 7, 2007 in which AHL stated, "please be advised our system automatically generates letters on the 10th of each month if a complete payment has not yet been received. Our monthly billing statements are mailed on or about the 12th of every month. If the payment is not received prior to the

billing statement being generated it will reflect due for two months." As of the date of this letter your loan is currently due for the August 1, 2007 payment." On top of all this, Smalls was receiving at lest **two phone calls per day** from AHL and including on the weekends, for which Smalls refused to answer the calls and let his answering machine take the calls.

48.  To-date Smalls has paid out a total of $18,036.10 directly to AHL from June 1, 2006 through July 1, 2007.  This amount includes Smalls' mortgage payment as well as AHL's attorney's fees for actions taken without basis in law or fact and which were disputed at every opportunity.

**COUNT I**

**Against All Defendants**

**REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)**

**12 U.S.C. SECTION 2601 _et seq_**

49.  Smalls incorporates the preceding allegations contained in the "facts common to all counts" 1-48 by reference.

50. RESPA requires that, upon receipt of a qualified written request, the servicer of a federally related mortgage loan must acknowledge receipt of the correspondence within _twenty days_, excluding weekends and holidays, and _within sixty working days_, must make appropriate <u>corrections or investigate</u> and provide the borrower with a written notification explaining why the servicer believes the account is correct. AHL is in violation of this provision of RESPA because, when Smalls requested certain documents and disputed the debt on September 13, 2006 and September 26, 2007, AHL nakedly claimed Smalls owed amounts for which his mortgage loan was in default without offering Smalls the benefit of the provisions of  12 U.S.C. §2605(e)(1)(A) 7 (2) or Section 24 C.F.R. § 3500.21(e).

51. Smalls tendered written requests to AHL regarding his mortgage account which constituted qualified written request(s), for documents on demand by AHL.  AHL refused to abide by Smalls' request in violation of RESPA, thereby preventing Smalls from determining whether or not he ought to obtain legal counsel in advance of the filing for foreclosure. The equitable mortgage transaction described above qualifies as a "federally related mortgage loan" as defined by 12 U.S.C.  §2602(1), and therefore is subject to the _Real Estate Settlement Procedures Act ("RESPA")_, 12 U.S.C. §2601, _et seq._

52. AHL failed to respond to Smalls' qualified written requests in violation of RESPA, and thereby prevented Smalls from determining how much money was due on a monthly basis and how much was necessary to refinance the home with a different lender to avoid the foreclosure.

53. AHL failed to conduct the necessary investigation into the dispute tendered by Smalls in violation of RESPA, thereby continuing AHL's wrongful foreclosure of the property and subjecting Smalls to additional unwarranted charges and fees which prevented him from the redemption of said property.

54. AHL failed to discontinue rendering false, misleading and inaccurate information to the credit reporting agency during the pendency of Smalls' qualified written requests, thereby disabling him from redeeming said property from being reported as a foreclosure. Defendants violated RESPA with respect to Plaintiff's loan.

55. Smalls has suffered damages as a result of these violations of RESPA and therefore Smalls respectfully requests: A. Actual damages, trebled under 12 U.S.C. Section 2607 (d)(2); B. Cost and disbursements: and if plaintiff is required to secure an attorney he also requests reasonable attorney's fees. As stated above, Smalls has been damaged in the following ways: (1) Smalls has suffered mental anguish, inconvenience, and worries that he would lose his home; (2) Smalls credit rating has suffered by AHL's reporting of false, inaccurate and misleading information to the credit reporting agencies; (3) Smalls had to pay late fees; (4) AHL has attempted to foreclose on Smalls' property; (5) Smalls has spent considerable time attempting to resolve the problems with AHL. AHL filed one or more reports with one or more credit bureaus in which AHL falsely asserted Smalls' payments were late and that he was delinquent. Smalls alleges that he made the payments in the proper amount but AHL fraudulently failed to post the payments and in fact returned those payments to Smalls. Smalls also alleges AHL failed to correct his account within sixty days and that it has fraudulently instituted foreclosure proceedings on Smalls' home.

**Wherefore,** Plaintiffs respectfully request:

A. Actual damages trebled under 12 U.S.C. Section 2707 (b)(2);

B. Costs and disbursements; and

C. Possible attorney's fees.

## COUNT II

## Against All Defendants

### TRUTH IN LENDING ACT (TILA)

### 15 U.S.C. SECTION 1601 *et seq* & 69v-160.027

56. Smalls incorporates the preceding allegations contained in the "facts common to all counts" 1-55  by reference. Its implementing regulations, federal *reserve Board Regulation Z*, 12 C.F.R. Sec 226.

57. This claim is filed under the Truth In Lending Act ("TILA"), 15 USC §1601, *et seq*. Smalls' mortgage was of such nature that AHL was required to issue Truth In Lending Act notices to Smalls on an ongoing basis.

58. Among those disclosures, AHL was required to inform Smalls of the amount of his periodic payment due under the mortgage. AHL failed to correct errors noted by Smalls in his dispute letter within 60 days of discovery and prior to filing suit.  Smalls did not receive any disclosure from AHL while he and AHL were in a Forbearance Agreement nor did Smalls receive any monthly billing statements during the forbearance period.

59. Throughout the life of the mortgage, on or about the month of March 2007, AHL's attorney issued materially false or misleading disclosures to Smalls by way of facsimile. Those disclosures were not meaningful, clear or conspicuous.

60.  Ms Sheryl Brown was "acting as mortgage broker" or "associate" within the meaning of Fla. Stat. §494.001(3), Accredited Home Lenders, Inc Loan Servicing Department has "acted as a mortgage lender" within the meaning of Fla. Stat. §494.001(4).  AHL has violated the TILA. AHL further violated the TILA, when Smalls never received a copy of the parties signed Forbearance Agreement.

61. Ms Sheryl Brown violated Fla. Stat. §494.0038 by attempting to receive Mortgage Broker's Fees as indicated on the legal documents per HUD.  (Real estate brokers have a common law duty to deal honestly and fairly. This duty requires brokers to disclose to the principal any material fact to the transaction).

62.  In addition, Defendants are liable to Smalls for: (a) the return of any money that has been given to anyone in connection with the transaction; (b) actual damages in an amount to be determined at trial; (c) statutory damages as provided by 15 U.S.C. Sec

1640; (d) costs and disbursement; and (e) Attorneys fees if Smalls must retain a lawyer to pursue his rights and obtain reimbursement for the damages he has sustained as a result of violations of the TILA and other statutes and or Acts as noted herein. By failing to provide two copies of the notices of the right to rescind and an accurate date for the expiration of the rescission period in violation of 15 U.S.C. Sec. 1635 and 12 C.F.R. Sec 226.23(b). The above violations of the *Truth in Lending Act and HOEPA* give Plaintiffs an extended right to rescind the equitable loans held by the Defendants AHL pursuant to 15 U.S.C. Sec 1635 & 1641 (d)(1) and 12 C.F.R. Sec 226.23. By failing to disclosed properly and accurately the "total of payments" in violation of 15 U.S.C. Sec 1638(a)(5) and 12 C.F. Sec 226. 18(h) and By failing to disclose properly and accurately the number, amount, and due dates or period of payments scheduled to repay the obligation in violation of 15 U.S.C. Sec. 1638(a)(6) and 12 C.F.R. Sec 226(g). In addition, the Defendants are liable to the Plaintiff for:(a) the return of any money or property that have given to anyone in connection with this claim and (c) Statutory damages as provided by 15 U.S.C. Sec 1640.

**Wherefore,** Plaintiff Smalls respectfully requests judgment for actual damages, punitive damages, statutory damages, plus interest, costs and possible attorney's fees.

## COUNT III

### Against All Defendants

### BREACH OF CONTRACT

63. Smalls incorporates the preceding allegations contained in the "facts common to all counts" 1-62 by reference.

64. In breach of oral and written agreements <u>specific performance</u> is required in most cases. "Forbearance: Definition" 1. Lender's decision not to exercise a legally enforceable right against a borrower in default, in exchange to make regular payments in the future. For example, a mortgage lender will agree not to initiate foreclosure proceedings against a mortgagor whose loan is in arrears. 2. The act of surrendering the right to enforce a valid claim usually in return for a binding promise to perform a specified act. AHL breached the forbearance agreement/or the contract with Smalls by filing additional motions in the Circuit Court when they were informed to hold off from any more foreclosure filings for the said property. On July 5, 2006, just *nine days later* and in violation of this agreement, AHL's Attorneys filed a *<u>Motion For Summary Final Judgement Of Foreclosure</u>*.

The Law Dictionary Defines Oral Contract as, "An agreement made with spoken words and either no writing or only partially written. An oral contract is just as valid as a written agreement."

    a. AHL overcharged Smalls for attorneys fees and costs when Smalls was current in his mortgage payments.

    b. AHL manufactured a default which it wrongly attributed to Smalls in order to pressure him into paying unnecessary and unwarranted fees and costs.

    c. AHL imposed unnecessary fees and costs upon Smalls.

    d. AHL repeatedly misstated the amount due under Smalls' loan.

    e. AHL wrongfully placed an ad listing Smalls' property along with other foreclosures.

    f. AHL refused to perform in good faith.

    g. AHL willfully misstated Smalls' payment history to the credit reporting agencies so as to disable him from refinancing at a reasonable rate.

    65. AHL accelerated the entire balance of the contract in bad faith and commenced foreclosure proceedings. These actions by AHL constitute an additional  breach of the contract obligations as construed by Florida State Law and/or Federal Law.

    66. Smalls has suffered damages as a result of the breach of contract and the breach of the Forbearance Agreement by AHL.

**Wherefore,** Plaintiff Smalls respectfully requests:

A.  That the "foreclosure consulting contracts be declared null and void with an effective date of June 26, 2006  with no further force and effect whatsoever.

B.  Award Plaintiff Smalls both Actual and Punitive Damages.

## COUNT IV

### Against All Defendants

### BREACH OF FIDUCIARY DUTY

    67. Smalls incorporates the preceding allegations contained in the "facts common to all counts" 1-66  by reference.

    68. AHL owed fiduciary duties to Plaintiff Smalls. These duties include, but are not limited to, a duty to act in good faith for the benefit of Smalls in faithfully executing duties required by the Protection of Homeowners in Foreclosure Act, the Truth in Lending Act, the Real Estate Settlement Procedures Act, the Florida Consumer Protection Act and the

Florida Mortgage Loan Act as well as to act in the utmost good faith and to disclose all material information. AHL breached their fiduciary duties to Smalls by holding back two of Smalls' mortgage payments thus manufacturing a default of his loan where none existed in breach of the Forbearance Agreement. A direct and proximate result of the Defendants' Breach of their fiduciary duties was that Smalls was damaged financially, socially and, psychologically. AHL further breached their fiduciary duties and obligations owed to Smalls intentionally, maliciously, fraudulently and in conscious disregard of the rights of and likelihood of economic injury to Smalls and at all times to further their own economic interest at the expense of Smalls.

69. By reason of the foregoing, Smalls has suffered damages in an amount to be determined at trial, but not less than $15, 000.00 actual damages and punitive damages, interest, costs and possible attorneys's fees.

**Wherefore**, the Plaintiff requests:

A. Judgement in an amount to be determined at trial, but not less than $ 15, 000.00 plus interest, costs and attorney's fees.

**COUNT V**

**Against All Defendants**

**FLORIDA MORTGAGE FORECLOSURE ACT (FMFA) CHAPTER 703.03**

70. Smalls incorporates the preceding allegations contained in the "facts common to all counts" 1-69 by reference.

71. This claim is brought under the Florida Mortgage Foreclosure Act. Under the terms of this statute, mortgagees are entitled to initiate the self-help foreclosure proceedings specified by the Act only when the mortgagor is in default.

72 At the time AHL initiated foreclosure proceedings in the month of June 2006, any default was one manufactured by AHL. Consequently, charges and fees that accrued as a result of the foreclosure were not lawful under the FMFA. A deed of trust is an instrument used to secure the payment of a "note" involving the sale and purchase of real estate. It provides the conditions which can trigger the default provisions to begin the foreclosure process. As a practical matter however, most mortgage companies will not immediately institute foreclosure proceedings. They will generally first make some efforts to contact the borrower and attempt to have the borrower bring the account current. If

these effects prove unsuccessful, then the mortgage company will institute foreclosure proceedings. (The mortgage company or lien holder must first serve you with written notice by certified mail. The notice must inform you of your default under the deed of trust and give you at *least twenty days to cure the default*. If you fail to cure the default within the twenty days period, the mortgage company may then declare the entire debt due pursuant to a notice of acceleration and post the property for sale, pursuant to a Notice of Sale. The first notice of default and second notice of acceleration can be combined in the same letter). If your FHA-insured mortgage becomes delinquent after 3/1/97, the lender must give the homeowner notice of a payment delinquency no later than the end of the first delinquent month. The lender must review all loans in default for 3 months to determine if any "loss mitigation" options to help avoid foreclosure are appropriate. The consideration of all "loss mitigation" options must be documented before the lender initiates foreclosure." These provisions prove the initiation of a complete acceleration of the balance by AHL against Smalls was not warranted and that AHL wrongfully filed suit to foreclose upon Smalls' property.

73. The action taken by AHL exerted extreme pressure on Smalls and further aggravated/exacerbated his already severe service-related stress condition. The *Lis Pendens filing* was due to fraud, without any real basis for the claim in the first instance. Once this claim was filed the danger behind is best described by the following: "In litigation real property cases, one needs to be careful that the owner does not convey title or encumber the property during the pendency of the litigation. This is done by recording a *lis pendens*. Section 48.23 is important because the recording of *lis pendens* may prevent the other party from transferring or further encumbering the property. Once a lis pendens is recorded, the adversely affected party may move to have it discharged. In determining whether to dissolve a lis pendens, the court should review the complaint, the contract and any other relevant evidence to determine if there is a fair nexus between the property and the dispute.

74. A mortgage is an agreement whereby one puts up real property as collateral to secure a payment of an existing debt or future advances. Fla. Stat. § 697.07. Mortgages are subject also to the Federal Truth In Lending Act.

75. Smalls exercised his rights under the Home Ownership and Equity Protection Act of 1994 (HOEPA) when he filed his Answer and Affirmative defense to Petitioner

Accredited Home Lenders, Inc on July 11, 2006 in case No. 06-4216-CI-08. On July 12, 2006 Smalls filed an Answer to AHL's Motion For Summary Final Judgement Of Foreclosure dated July 12, 2006. On July 13, 2006 Smalls filed a Motion To Set Aside Entry of Default by AHL. On October 24, 2006 Smalls filed a Motion for an Order to Dismiss AHL's Motion For Foreclosure and to Deny Attorney's Fee's and Cost. Also, on October 24, 2006 Smalls filed a Motion for an Order for fees and costs and billing.

The Court may award damages equal to three times the amount of actual damages and possible attorney fees. The court may further enter any order or judgement necessary to "...[r]estore to a person any money or real or personal property acquired from the person by means of any prohibited practices." Therefore, Smalls respectfully requests:

A. That the "foreclosure consulting contracts" be declared null and void and of no further force and effect as of June 20, 2006.

B. All Court records and Public Records be expunged as though the Foreclosure action never occurred.

C. Award Plaintiff actual damages.

D. Award possible attorney fees.

E. Award of actual damage for Intentional Infliction of Emotional Distress.

F. For such other and further relief as justice and the nature of Plaintiff Smalls' cause may be deem just and proper by the Court.

<u>**COUNT VI**</u>

<u>**Against All Defendants**</u>

<u>**INVASION OF PRIVACY BY INSTRUCTION UPON SECLUSIONS**</u>

76. Smalls incorporates the preceding allegations contained in the "facts common to all counts" 1-75 by reference.

77. "Public records includes any writing containing information relating to the conduct of the public's business prepared, owned used, or retained by any state or local agency regardless of physical form or characteristics as cited of the F.S.A §§ 119.07 and 119.012. (1) Electronic Data Base Information." Smalls' foreclosure information was indeed public to the world at large. friends, family and even complete strangers were able to access records of the foreclosure action against Smalls' property.

78. AHL's actions have produced solitude and seclusion. Potential buyers/people of

interest coming to Smalls' house made offers to buy his house well below market price as it was listed in the Public Records and the Court Records as a foreclosure property.

79.  The intrusions by AHL occurred in a way that would be highly offensive to a reasonable person in that position. AHL's false communications, acts and omissions harmed Smalls' reputation as well.

80.  Smalls has a reasonable expectation of privacy in his solitude, seclusion, or private concerns or affairs.

81.  Smalls has been seriously damaged as a result and is entitled to his costs and reparations for damages.

**Wherefore,** Plaintiffs respectfully requests:

A.  Award of actual damage for: Infliction of Emotional Distress.

B.  An award of actual damages in the amount of $50,000.00 and award of punitive damages, cost, interest and possible attorney fees.

## COUNT VII

### Against All Defendants

### NOTICE OF DEFAULT ("NOTE") & DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, CHAPTER 501, 204 (1) AND SECTION 501.2078 (a)(c)

82.  Smalls incorporates the preceding allegations contained in the "facts common to all counts" 1-81 by reference.

83.  AHL failed to comply with the provisions of the FHA" NOTE" and the clear rule of law "(1) Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

84.  **UNDISPUTED FACTS:** Smalls' "Florida Fixed Rate Note" which is dated January 26, 2005 is subject to the law.  The Note clearly stated under ***Default*** (6)(B) and (C) *Notice of Default*, "the holder may send Smalls a written notice informing him that failure to pay the overdue amount by a certain date will result in the *Note Holder* requiring Smalls to pay immediately the full amount of the Principal which has not been paid and all interest owing on that amount." That date must be at least **30 days after the date** on which the notice is mailed to Smalls or delivered by other means." AHL failed to comply with this provision of

the Act. (8). **OBLIGATION OF PERSONS UNDER THIS NOTE:** If more than one person signed this Note, each person is fully and personally obligated to keep all of the promise made in this Note.

85.   Therefore AHL had no right whatsoever to file suit against Smalls in a LIS PENDENS CLAIM in the Circuit Court Of The Sixth Judicial Circuit Of Florida In And For Pinellas County dated June 20, 2006. This filing by AHL was done by fraud and without basis in law.

86.   AHL and their affiliates willfully, intentionally and deceitfully concealed and misrepresented facts regarding their intentions with respect to Smalls' two mortgage payments, residential properties and title. Smalls relied upon Defendant's willful, deliberate and deceitful misrepresentations to his detriment.

**Wherefore**, plaintiff Smalls respectfully requests:

A.  Award of actual damage for: pain & suffering and Infliction of Emotional Distress.

B.  Smalls has been seriously damaged as a result and is entitled to damages and costs.

C.  An award of actual damages in the amount of $50,000.00 and award of punitive damages.

D.  For such other and further relief as justice and the nature of the Plaintiffs cause the Court may deem just and proper.

<u>**COUNT VIII**</u>

<u>**Against All Defendants**</u>

<u>**FAIR BILLING ACT AND FAIR CREDIT REPORTING ACT OBLIGATION OF FURNISHERS OR SERVICERS (FCBA) AND (FCRA) 15 USC §§1601 & 1681 AND § 1666.**</u>

87.   Smalls incorporates the preceding allegations contained in the "facts common to all counts" 1-86 by reference.

88.   AHL failed to comply with the clear rule of law such as the Fair Billing Act as to a dispute from Smalls and the Fair Credit Reporting Act.   AHL refused to investigate, reinvestigate all of Smalls' billing disputes under the Fair Billing Act and AHL also failed to send the correct and complete information to the credit reporting agencies that reflect the

truth of Smalls' payment history with AHL. AHL failed to investigate/reinvestigate Smalls' deputes in a timely manner and report current and accurate information to the credit reporting agencies under Section §§623(a)(1)(B), 623(a)(3) and the Fair Billing Act, 15 U.S.C. 1601 §§161 and 164. AHL failed to report accurate and complete information to the three major credit reporting agencies with respect to Smalls' mortgage payments and account with AHL.

89. AHL willfully and /or knowingly violated these Acts by failing to investigate Smalls' mortgage account billing statement and by submitting to the credit reporting agencies false, inaccurate, misleading information pertaining to Smalls' mortgage history and relationship with AHL with respect to his Mortgage payments.

90. Smalls' personal, social and economic life was adversely affected by AHL's actions and Smalls was libeled by AHL's publishing and distribution of false information with reckless disregard of whether the information was incomplete or inaccurate and after acknowledging Smalls was not behind in his mortgage payments.

91 . These actions by AHL constitute a violation of the Acts listed above.

92 . Smalls has been seriously damaged as a result and is entitled to damages and costs.

**Wherefore**, Smalls respectfully requests judgement for actual damages, punitive damages, statutory damages, plus, interest, costs and possible attorney fees.

A. Award of actual damage for: pain & suffering and Intentional Infliction of Emotional Distress.

## DEMAND FOR JURY TRIAL

93 . Smalls incorporates the preceding allegations contained in the "facts common to all counts" 1-92 by reference. Rule 1.06(a) and Rule 38(b) Fed. R. Civ.P.

94 . Plaintiff demands trial by jury in this action.

## REQUEST FOR EQUITABLE, DECLARATORY & INJUNCTIVE RELIEF RULE 1.06 (b) AND RULE 65. FED. R. CIV. P AND DEMAND FOR JUDGEMENT FOR RELIEF AND CHAPTER 86, FLORIDA STATUTES 1997 SECTION 86.021

95. Smalls incorporates the preceding allegations contained in the "facts common to all counts" 1-94 by reference.

96. Smalls was not in default until AHL wrongfully withheld two of Smalls' mortgage payments and accelerated the mortgage balance due. Likewise, a genuine, good faith dispute existed over the amount of the monthly payment due and the balance owing to AHL once Smalls was current with his mortgage payments.

97. Smalls requests the Court grant him equitable, declaratory and injunctive relief to decelerate the mortgage principle that he had to pay for paying off AHL's loan and declare Smalls not to have been in breach of the forbearance agreement and that the circumstances show the existence of a forbearance agreement and the good faith efforts by Smalls to make his payments in accordance with the spirit of this agreement made the foreclosure action by AHL unwarranted under the Predatory Lending Act and/or other statutory provisions and that Smalls suffered harm thereby and is therefore due actual costs, compensatory damages and injunctive relief as prayed herein.

98. Smalls is entitled to a positive judicial declaration restoring any and all rights to his property and clearing any claim or encumbrance caused by Defendant's illegal acts described throughout this Complaint. Additionally, Smalls requests an accounting of all sums due and owing based upon facts found and correction of all credit reporting relating to the account.

**Wherefore** Plaintiffs respectfully request judgement for actual damages, punitive damages, statutory damages, plus interest, costs, and possible attorneys fees, if Smalls would have to hire an attorney in furtherance of these substantial claims.

Further respectfully prays for the following relief against all Defendants, jointly and severally, concurrently or, where appropriate, in the alternative seeks the following relief from this Honorable Court. Rule1.06(b). Rule 65, Fed R. Civ. P and Rule 4.05 and 4.06.

A. Treble damages pursuant to 18 USC §1964, in an amount to be proven at trial, but up to Forty-five Thousand Dollars.

For Actual Damages in such amount as shall be shown at time of trial herein, pursuant to 15 USC §1640, in an amount to be proven at trial, but not less than Fifteen Thousand Dollars.

B. For Special Damages in such amount as shall be shown at time of trial herein;

C. For Future Damages in such amount as shall be shown at time of trial herein;

D. For Punitive Damages in such amount as shall be shown at time of trial herein, to the maximum extent allowed by law.

E. For Compensatory Damages in such amount as shall be shown at time of trial herein;

F. For Consequential and Incidental Damages in such amount as shall be shown at time of trial herein;

G. For attorney's fees and costs, if Smalls is constrained to hire an attorney, together with interest and pre-judgment interest;

H. An Injunction to permanently restrain Defendants, their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them who receive actual notice of the injunctions, from engaging in the acts and practices noted herein in violation of lawful provisions as specifically alleged above, and any similar acts and practices;

I. The imposition of reasonable restrictions upon the future activities of Defendants AHL including, but not limited to prohibiting Defendant AHL from engaging in any further acts of the kind.

Respectfully Submitted.

EUGENE C. SMALLS,
Plaintiff-Pro Se
2312 22nd Ave SW
Largo, FL 33774
Tel: (727) 581-2782

Dated: Largo, Florida  /-8-08

### THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

EUGENE C. SMALLS

Plaintiff,

Vs.

ACCREDITED HOME LENDERS, INC.
ET AL.

Defendants.

**CIVIL COMPLAINT SUMMONS:**

**CASE NUMBER:** 8:07-CV-01463-T-23 TBM
**FED. R. CIV. P.4**

### IMPORTANT WAIVER OF SERVICE

**YOU ARE HEREBY SUMMONED** and required to serve an answer to the foregoing Second Amended Complaint which is herewith served upon you, within 20 calender days after service of this summons, exclusive of the day of service. If you fail to do so, judgment by default will be taken against your company, Accredited Home Lenders Inc. (AHL),  for the relief demanded in the complaint, UNDER FED. R. CIV. P.4.  You must file your answer with the Clerk of the Court within a reasonable period of time after service by Certified Mail and Returned Receipt.

TO: Clerk of the Court
    801 North Florida Avenue
    Tampa, Florida 33602

ATTN: James I. Sullivan, Esquire
    Hinshaw & Culbertson LLP
    100 South Ashley Drive Suite 500
    Tampa, Florida 33602

You are further instructed to mail a photocopy of your written response to Plaintiff or Plaintiff's Attorney as named below:

ATTN: EUGENE C. SMALLS
    2312 22nd Av SW
    Largo, FL 33774
    Tel: (727) 581-2782

**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

EUGENE C. SMALLS

  Plaintiff,

  Vs.

ACCREDITED HOME LENDERS, INC.
ET AL
.

  Defendants.

CASE NUMBER:8:07-CV-01463-T-23

**DEMAND FOR JURY TRIAL**

## DEMAND FOR JURY TRIAL

  Pursuant to Local Rules of this Court, demand is hereby made for trial by jury.

Dated: LARGO, FLORIDA   *1-8-08*

       BY:

        EUGENE C. SMALLS
        Plaintiff - Pro Se
        2312 22ND Av SW
        Largo, FL 33774
        Tel: (727) 581-2782

## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

EUGENE C. SMALLS  PRO, SE

Plaintiff,

Vs.

ACCREDITED HOME LENDERS, INC.
ET AL.

Defendants.

**CASE No:** 8:07-CV-01463-T-23

**CERTIFICATE OF SERVICE
LOCAL RULE 1.07**

## CERTIFICATE OF SERVICE

TO: Clerk of the Court
    801 North Florida Avenue
    Tampa, Florida 33602

    I, Eugene C. Smalls, Plaintiff, declare that I served <u>Accredited Home Lenders, Inc</u> a

copy of the *Second Amended Complaint, Summons and Demand For Jury Trial* by,

depositing on January 8, 2008 postage prepaid and by certified mail and returned

receipt in the U.S. Mail Pursuant to LOCAL RULE 1.07, directed to the address below.

TO: ATTN James I. Sullivan, Esquire
Hinshaw & Culbertson LLP
100 South Ashley Drive Suite 500
Tampa, Florida 33602

_____
EUGENE C. SMALLS
Plaintiff-Pro Se

Dated: LARGO, FLORIDA _1-8-08_____